[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10658

_____

D.C. Docket No. 7:09-cr-00008-WLS-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWAIN D. WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 15, 2013)

Before TJOFLAT and COX, Circuit Judges, and MOTZ,* District Judge.

PER CURIAM:

_____

* Honorable J. Frederick Motz, Senior United States District Judge for the District of
Maryland, sitting by designation.

Dwain D. Williams was convicted in the Middle District of Georgia of three offenses: traveling in foreign commerce and engaging in illicit sexual conduct, in violation of 18 U.S.C. § 2423(c), (e) (count one); aggravated sexual abuse of a child committed while accompanying the Armed Forces outside the United States, in violation of 18 U.S.C. §§ 2241(c) and 3261(a)(1) (count two); and abusive sexual contact with a child committed while accompanying the Armed Forces outside the United States, in violation of 18 U.S.C. §§ 2241(a) and 3261(a)(1) (count three). The conduct alleged in the indictment occurred in and around Okinawa, Japan. Subject matter jurisdiction for counts two and three was based upon the Military Extraterritorial Jurisdiction Act of 2000 ("the MEJA"), 18 U.S.C. §§ 3261-3267.[1]

I.

The evidence, the sufficiency of which is not contested on appeal, established that Williams was married to a member of the United States Air Force. While his wife was stationed in Okinawa, Williams engaged in sexual conduct with his step-daughter, A.F., having vaginal intercourse with her. On one occasion he also performed oral sex on her, and he occasionally touched her breasts when

---

[1] 18 U.S.C. § 2423(c) defines the crime on which count one is based and also provides the court with subject matter jurisdiction to adjudicate that charge. Williams does not expressly dispute the constitutionality of that statute. Williams' Sixth Amendment arguments are equally applicable to all three counts, however, and our analysis of Williams' challenges to the MEJA also applies to 18 U.S.C. § 2423(c).

2

penetrating her.  Williams and his family lived in three different residences while they were in Japan, two of them located on the air base and one located off the base, in the city of Koja.  Williams' wife was eventually transferred to an Air Force base located in Georgia.  While Williams was in Afghanistan working as a civilian, A.F. told her mother and other family members about the sexual abuse to which she had been subjected.  When Williams returned to Georgia he was arrested and prosecuted.

## II.

Williams contends that the MEJA is unconstitutional because it subjects to criminal prosecution in the United States conduct that was committed outside the territorial or special maritime or admiralty jurisdiction of the United States.

In *Reid v. Covert*, 354 U.S. 1 (1957), the Supreme Court held that civilian dependents of members of the armed forces could not be convicted of capital offenses by a court-martial conducted under the provisions of the Uniform Code of Justice.  The Court ruled that in such a prosecution the defendant's constitutional right to be charged by an indictment returned by a grand jury, guaranteed by the Fifth Amendment, and her constitutional right to a jury trial, guaranteed by Article III and the Sixth Amendment, were violated.  *Id.* at 32.  In *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234 (1960), the Court extended the holding in *Reid* to non-capital offenses.  However, in *Kinsella* the Court contemplated the extension

3

of federal criminal jurisdiction over civilian defendants as an alternative to a court-martial proceeding.  361 U.S. at 246 ("[T]he immediate return to the United States permanently of such civilian defendants, or their subsequent prosecution in the United States for the more serious offenses when authorized by the Congress, might well be the answer to the disciplinary problem.").

The MEJA does not violate a defendant's right to be charged by an indictment or his right to be tried by a jury.  Under the MEJA a defendant is prosecuted in the United States in a criminal court and is afforded the constitutional rights afforded by Article III and the Fifth and Sixth Amendments.  Williams was indicted by a grand jury and convicted by a petit jury.  Williams argues, however, that the MEJA nevertheless is unconstitutional under the venue provision of the Sixth Amendment and the compulsory process provision of the Sixth Amendment.  Neither contention is meritorious.

The Sixth Amendment provides that crimes which have been committed within a state and district shall be tried there.  U.S. Const. amend. VI.  However, Article III contemplates that offenses against the laws of the United States may be committed somewhere other than in a state and that in such cases "the Trial shall be at such Place or Places as the Congress may by Law have directed."  U.S. Const. art. III, § 2.  Congress has exercised the authority granted to it by Article III by providing in 18 U.S.C. § 3238 that "[t]he trial of all offenses begun or

committed upon the high seas, or elsewhere outside of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought." It is undisputed that Williams was arrested in the Middle District of Georgia, and his prosecution in that district therefore was consistent with the dictates of both § 3238 and the Sixth Amendment's venue provision.

The Sixth Amendment also provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Williams contends that the district court's lack of subpoena power over foreign nationals residing outside the United States renders the MEJA unconstitutional because it deprives defendants such as Williams of their right to have the court compel the testimony of favorable witnesses. To prove a compulsory process violation, however, a defendant must make a "plausible showing" that the witness's testimony "would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). As the district court noted, Williams made "no attempt . . . to name any witness who would be material and favorable to his defense, let alone any showing by [Williams] regarding said witness's materiality and favorability." Williams therefore has failed to establish any violation of the Sixth Amendment right to compulsory process.

5

III.

The final issue on appeal is whether the district court imposed an improper general sentence.  "A general sentence is an undivided sentence for more than one count that does not exceed the maximum possible aggregate sentence for all the counts but does exceed the maximum allowable sentence on one of the counts." *United States v. Woodward*, 938 F.2d 1255, 1256 (11th Cir. 1991).  General sentences are *per se* illegal in this circuit and require a remand.  *United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005).  The maximum sentence permissible under 18 U.S.C. § 2423(c), upon which count one is based, is thirty years.  The district court's undivided sentence of life imprisonment followed by a lifetime period of supervised release therefore exceeded the maximum allowable sentence on the first count and constituted an impermissible general sentence, and the United States agrees that the case should be remanded for correction of the sentence.  Accordingly, we vacate the sentence and remand the case for clarification of the sentence, including the term of supervised release, applicable to each count of which Williams was convicted.  *See United States v. Martinez*, 606 F.3d 1303, 1304 (11th Cir. 2010) (stating that 28 U.S.C. § 2106 "unambiguously grants the circuit courts broad discretion to fashion an appropriate mandate on remand after the vacatur of a sentence").

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

6